KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. <u>1:21-cv-506</u> |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| TOMLINSON & ASSOCIATES, INC., LATAH VILLAGE APARTMENTS, LATAH VILLAGE, LLC, GREENFIELD APARTMENTS, GOTTA LLC, GREENFIELD LLC, MICHELLE CHARLTON, TERESA STEWART, and HILLARY HARVEY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of

action against the Defendants Tomlinson & Associates, Inc., Latah Village Apartments, Latah

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

1

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

Village, LLC, Greenfield Apartments, Gotta LLC, Greenfield LLC, Michelle Charlton, Teresa Stewart, and Hillary Harvey, states and alleges as follows:

<u>NATURE OF THE ACTION</u>

1. This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief, and damages on the following bases:

    a. Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

        i. Discrimination in the sale or rental, by refusing to negotiate for the rental of, or otherwise made unavailable, a dwelling because of "race", "national origin", "color", and "familial status", 42 U.S.C. §3604(a);

        ii. Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "race", "national origin", "color", and "familial status", 42 U.S.C. §3604(b);

        iii. Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "race", "national origin", "color", and "familial status", 42 U.S.C. §3604(c);

        iv. Representing to any person because of "race", "color", "religion", "sex", "handicap", "familial status", or "national origin" that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available, 42 U.S.C. §3604(d); and

        v. Interference, coercion or intimidation, 42 U.S.C. §3617.

    b. Fair Housing Regulations, 24 C.F.R. §100 et seq.

    c. Negligence.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and

28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  Many of the pleadings invoke a federal

question.  The amount in controversy exceeds $75,000 exclusive of interests and costs.

Pleadings that do not invoke federal question are based in the same nucleus of fact and eligible

as supplemental pleadings.  Venue is proper in this District in that the claims alleged herein arose

in the City of Boise, County of Ada, State of Idaho.

## PARTIES

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or

"IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with

its principal place of business at 4696 West Overland Road, Suite 140, Boise, Idaho 83705.  Its

mission is to ensure open and inclusive housing for all people, and to advance equal access to

housing for all persons without regard to race, color, sex, religion, national origin, familial status,

sexual orientation, gender identity, source of income, or disability (the term "handicap", as that

term is used and defined in the FHA, is used herein interchangeably with the term

"disability").  The Plaintiff attempts to eradicate discrimination in housing through, among other

things, education on the fair housing laws, housing information and referrals, housing

counseling, and assistance with mediating and or filing complaints.  The Plaintiff also provides

education and outreach on fair housing laws and practices to housing consumers, providers, and

others.

4.  The Defendant Tomlinson & Associates, Inc. (hereinafter "Defendant Tomlinson") is

a corporation doing business in the State of Idaho at 121 North 9th Street, Suite 300, Boise, Idaho

83702.  Defendant Tomlinson is in the business of selling or renting dwellings and provided

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

management services with regards to Latah Village Apartments at all times relevant to this action.

5.   The Defendant Latah Village Apartments (hereinafter "Latah Village") is an unincorporated entity doing business in the State of Idaho as a multi-family apartment complex located at 3905 West Alpine Street, Boise, Idaho 83705 and is one of the parcels of real property that is the subject of this action.  Latah Village is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

6.   The Defendant Latah Village LLC. is a limited liability company doing business in the State of Idaho at 205 North 10th Street, 2nd Floor, Boise, Idaho 83702.  Said Defendant is the owner of record of the Subject Property.

7.   The Defendant Greenfield Apartments (hereinafter "Greenfield") is an unincorporated entity doing business in the State of Idaho as a multi-family apartment complex located at 4923 W Albion Ct, Boise, Idaho 83705 and is one of the parcels real property that is the subject of this action.  Greenfield is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

8.   Defendant Gotta LLC was a limited liability company that did business at the time relevant to this complaint in the State of Idaho at 121 North 9th Street, 2nd Floor, Boise, Idaho 83702.  Said Defendant was the owner of record of Greenfield at times relevant to this complaint.

9.   Defendant Greenfield LLC is a limited liability company doing business in the State of Idaho at 121 North 9th Street, Boise, Idaho 83702.  Said Defendant is the owner of record of Greenfield.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

10.  The Defendant Michelle Charlton (hereinafter "Defendant Charlton") is or was an employee of Defendant Tomlinson and acted as a property manager with regards Latah Village and Greenfield at times relevant to this action.

11.  The Defendant Teresa Stewart (hereinafter "Defendant Stewart") is or was an employee of Defendant Tomlinson and acted as a property manager with regards to Latah Village at times relevant to this action.

12.  The Defendant Hillary Harvey (hereinafter "Defendant Harvey") is or was an employee of Defendant Tomlinson and acted as a property manager or agent and provided property maintenance with regards to Latah Village and Greenfield at times relevant to this action.

<u>STANDING OF PLAINTIFF</u>

13.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-12 above.

14.  But for the actions and omissions of the Defendants, the Plaintiff suffered damages, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

15.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

16.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

17.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).

18.  But for the actions and omissions of the Defendants, the Plaintiff suffered and continues to suffer significant and irreparable loss and injury and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

19.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-18 above.

20.  The Defendants have engaged in a long-term pattern of discrimination in violation of the FHA with regards to their ownership, operation and management of Latah Village and Greenfield.  Furthermore, the Defendants have failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff by failing to adequately train and supervise the agents and employees of the Defendants with regards to the requirements of the FHA.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

21.  Latah Village and Greenfield are multi-family apartment complexes located in Boise, Idaho.

22.  Latah Village and Greenfield have historically housed a significant population of black African refugees, many of whom are from the country of Somalia and the Democratic Republic of Congo, and some are practicing Muslims.

23.  On or about the 1st day of August, 2015, American-born, white adults, Colin Fenello (hereinafter "Fenello"), Jentry Skinner (hereinafter "Skinner"), and Roam Yocham (hereinafter "Yocham"), rented and moved into a three-bedroom unit #62 at Latah Village.

24.  Upon taking possession of the unit, the Fenello/Skinner/Yocham household noticed that the unit had new carpet but the counters were in bad condition and the unit was not clean. Within about a month Tomlinson & Associates sealed or recovered the counters with an applied substance.

25.  During their tenancy, Fenello, and Yocham noticed a change in managers from Sherry Eck to Defendant Charlton.

26.  Soon after the management change, the Fenello/Skinner/Yocham household were informed of a change in parking rules including a rule that each residential unit would be issued two parking permits to park in "resident parking" areas.

27.  At the time of the parking rules' change, the Fenello/Skinner/Yocham household had three drivers each with a car.  Fenello and Yocham went to the office to request the issuance to them of a third permit.  Despite the new rule that only two parking permits would be issued for each residential unit, the Defendants issued a third parking permit to the Fenello/Skinner/Yocham household.  However, when black African families with limited English proficiency who resided at Latah Village and Greenfield requested that the Defendants

VERIFIED COMPLAINT AND                    7
DEMAND FOR JURY TRIAL

issue them an extra parking permit, the Defendants initially refused to issue them the requested permits.  An extra permit was issued to those families by the Defendants only after the Plaintiff advocated on their behalf and submitted reasonable accommodation requests for the issuance of an extra permit.

28. Immediately following the parking rules changed, Yocham went to the Defendants' office to pay the rent.  At the time that Yocham arrived at the Defendant's office, a renter of color with limited English proficiency was already in the office discussing a matter with the Defendant Charlton.  Yocham observed the Defendant Charlton treat the other renter of color with rudeness despite that the other renter was acting respectfully toward the Defendant Charlton.  After the other renter of color departed and Yocham began his meeting with the Defendant Charlton, her demeanor with him significantly changed in that she was polite, focused, and efficient in their interaction.

29.  During the course of Fenello, Skinner and Yocham's tenancy, they had two guests stay overnight on countless occasions and received no lease violation notices, surprise inspections, or late-night inspections.

30.  Additionally, one member of the Fenello/Skinner/Yocham household frequently shared his parking permit with his guest so that the guest could park in the residential space while the resident parked in the guest parking areas.  No one in the Fenello/Skinner/Yocham household ever received a parking violation from the Defendants for parking in visitor parking.

31.  In or about late 2015 or early 2016, some of the black African residents of Latah Village provided unpaid babysitting/daycare including religious instruction for other black African residents of Latah Village with whom they were friends or were related.  In or about 2015, the Defendant Charlton demanded that said residents cease providing babysitting/daycare

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

for their friends and relatives, and told them that they would be evicted if they failed to do so. Out of fear that they would lose their housing, the residents complied with the Defendant Charlton's demand and ceased providing babysitting/daycare for their friends and relatives.  The Defendant Charlton did not make a similar demand on non-black or non-African residents of Latah Village who provided similar services for their friends and relatives at Latah Village.

32.  The Fenello/Skinner/Yocham household vacated Latah Village on or about the 31st day of May, 2016, and received the bulk of the security deposit, refunded in a timely manner without incident.  The white American families at Latah Village and Greenfield did not report any unwarranted deductions to the Plaintiff.  However, many black African families reported unwarranted deductions from their security deposits by the Defendants.

33.  Between 2015 and the summer of 2016, the Defendant Tomlinson terminated the leases, or attempted to terminate the leases, of at least three households of Congolese or Somali born families with limited English Proficiency with lease violations of parking rules and unapproved guests and over-occupancy as children reached five years of age.  In so doing, the Defendants treated these Congolese and Somali households differently than they treated similarly-situated white, American-born households, such as the Fenello/Skinner/Yocham household.

34.  From 2015 to present Plaintiffs received no complaints or reports that the leases of white, American-born families were being terminated when a child reached the age of five years old.

35.  In the spring of 2016, a family residing at Greenfield, which Defendant Charlton also managed, complained to the Plaintiff that Defendant would not grant a reasonable

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

accommodation for a parking permit for her unit and had charged her for infestation abatement that the family did not cause.

36.   On or about the 12th day of September, 2016, some of the black African residents of Latah Village organized an Eid celebration to take place in the common areas of Latah Village. In response, Defendant Charlton threatened the attendees of the celebration with arrest and called the Boise City Police to the scene, who refused to take any action to stop the legal celebration. In a videotaped statement to the Boise police, the Defendant Charlton told them that Latah Village "is not an African community anymore" and that "we have gotten rid of half of them" and that the property is "fifty-percent white now".

37.   As a result of the Defendant Charlton's statements, the Boise police alerted the Plaintiff as to the possibility that the Defendants are engaging in illegal discrimination at Latah Village and provided the Plaintiff with a copy of the videotape of the Defendant Charlton's discriminatory statements.

38.   On or about the 26th day of July, 2016, the Plaintiff attended a community outreach event with several other nonprofit social service organizations at the Jefferson Elementary School.  Said event was attended by a significant number of black African residents of Latah Village and Greenfield, who complained about the harassing actions of the Defendant Charlton, unequal enforcement and implementation of overly restrictive parking policies, night-time inspections by flashlight through windows, and complaints of unapproved occupants.  Many of the black African residents and residents with Limited English Proficiency stated that they did not feel welcome as residents at Latah Village and at Greenfield.

39.   On or about the 30th and 31st day of August 2016, the Plaintiff conducted two in-person tests of the Defendants.  On or about the 30th day of August, 2016, a white, American-

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

10

born male tester who spoke with an American accent contacted the Defendant Stewart and inquired with regards to the availability of a one- or two-bedroom apartment.  The Defendant Stewart told the Plaintiff's tester that a two-bedroom apartment would be available to rent on approximately the 5th day of September, 2016 and she showed an apartment to the Plaintiff's tester.  On or about the 31st day of August, 2016, a black, African-born male tester who spoke with a Swahili accent contacted the Defendant Stewart and inquired with regards to the availability of a one- or two-bedroom apartment.  The Defendant Stewart told the Plaintiff's tester that an apartment would not be available until the beginning of October 2016 and she did not offer to show the apartment to the Plaintiff's tester.  The Plaintiff's first tester who is a white, American-born male tester who spoke with an American accent re-contacted the Defendant Stewart on or about the 1st day of September, 2016 and inquired whether the apartment that she told him would be available on the 5th day of September, 2016, would still be available to rent on the 5th day of September, 2016 and the Defendant Stewart told him that it would still be available to rent on that day.

40.  On or about the 30th day of August, 2016, the Plaintiff met with the Defendants to discuss complaints of housing discrimination that the Plaintiff was receiving from black African tenants of Latah Village and Greenfield.  At that meeting, the Plaintiff specifically informed the Defendants that it had received numerous complaints of differential treatment on the basis of race and national origin in violation of the FHA, including the Defendants' discriminatory enforcement of parking rules at Latah Village and Greenfield.  Additionally, the Plaintiff informed the Defendants that one black African family was denied a reasonable accommodation to obtain a parking permit for their son to use in emergency medical situations in violation of the

VERIFIED COMPLAINT AND            11
DEMAND FOR JURY TRIAL                                              **KEN NAGY**
                                                                   **Attorney at Law**
                                                                   **Lewiston, Idaho**

FHA.  The Defendants only approved the accommodation after a considerable delay due to the intervention of the Plaintiff at the meeting.

41.  Subsequent to the meeting between the Plaintiff and the representatives of the Defendants on the 30th day of August, 2016, the Plaintiff continued to receive complaints from black African residents of Latah Village and Greenfield with regards to the Defendants' discriminatory enforcement of parking rules at Latah Village and Greenfield.  For example, a black African individual, Rahma Ali, visited Greenfield late at night on or about the 11th day of September, 2016 to check on the medical condition of her elderly mother, who was a resident of Greenfield.  The visitor briefly parked her vehicle without a permit in a space reserved for residents of Greenfield, because her mother was not issued a permit and her lease was not prorated for the withheld amenity. Upon returning to her vehicle after concluding her brief visit, Ms. Ali discovered that a "boot" had been attached to one wheel of her vehicle by agents of the Defendants to prevent her from driving her vehicle and a written notice had been placed on her vehicle requiring payment of a fine.  The visitor contacted the Defendants' agent Kase Parking Enforcement to explain that she needed an exception because she was there to help her mother with a blood sugar emergency and was told by the Defendants' agent that the "boot" would not be removed unless payment was made by the visitor.  Kase Parking Enforcement agent further told the visitor that they had been specifically instructed by the Defendants to show no leniency toward the African residents of Greenfield in enforcing the parking rules.

42. On or about the 17th day of October, 2016, the Plaintiff sent correspondence to the Defendants disclosing that it is continuing to receive complaints regarding the Defendant's actions with regards to black African residents who reside at other Tomlinson-managed properties.  However, the Plaintiff subsequently continued to receive complaints of

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

12

discrimination from black African residents of Latah Village and Greenfield and other properties managed by Tomlinson & Associates.

43.   In or about late October 2016, several providers of services to an African resident of Latah Village visited Latah Village.  They inquired of a maintenance person at Latah Village where they were permitted to park their vehicles and they were directed to park in specific spaces.   These service providers included Mohammed Ali, a black immigrant interpreter from Somalia, and Kristen Louderbaugh, a white/Caucasian peer-support specialist.  Upon a subsequent visit to Latah Village by Mr. Ali and Ms. Louderbaugh on or about the 11th day of November, 2016, the two visitors parked their separate vehicles in the same spaces where they had been previously directed to park.  Upon returning to their vehicles after concluding their visit, they discovered that the agents of the Defendants had placed a "boot" on Mr. Ali's vehicle that prevented him from driving his vehicle and a written notice had been placed on his vehicle requiring payment of a fine.  However, no "boot" or notice had been placed on Ms. Louderbaugh's vehicle.

44.   As a result of the complaints of discrimination that the Plaintiff received from black African residents of Latah Village and Greenfield, it began an investigation of the matter. During the course of its investigation, the Plaintiff conducted tests of the Defendants' actions regarding the Latah Village throughout the years 2016 through 2018.

45.   The multiple tests conducted by the Plaintiff produced evidence that white/Caucasian applicants for housing at Latah Village are treated better than black African and black/African-American and other non-American born applicants for housing Latah Village.  For example, when a white/Caucasian tester inquired as to the availability of a one-bedroom apartment at Latah Village on the 8th day of February, 2017, she was told by the Defendant Charlton that such

VERIFIED COMPLAINT AND                    13
DEMAND FOR JURY TRIAL

a unit would be available by the end of February 2017. However, when a black/African-American tester inquired as to the availability of a one-bedroom apartment at Latah Village on the next day, she was told by the Defendant Charlton that there would be no such units available until the end of March 2017. Furthermore, during the course of the test conducted by the white-Caucasian tester described above, the Defendant Charlton told the tester that "there's usually no kids" who reside there, therefore she calls it the "quiet building". The Defendant Charlton further told the tester, who is a white/Caucasian female, that "you'd just fit right in here…the diversity come around and go". Such conduct constitutes discrimination on the basis of race, color, national origin, and familial status in violation of the FHA.

46. Furthermore, during telephonic tests conducted over the course of late February/early March 2017, an African American tester with an obvious African accent, who inquired as to the availability of a two-bedroom apartment at Latah Village, was told by the Defendant Charlton that there were no such units available. However, when a tester with a "standard" American accent inquired the next morning as to the availability of a two-bedroom apartment at Latah Village, she was told by the Defendant Charlton that there would be such a unit available by the end of March 2017. Such conduct constitutes discrimination on the basis of race and national origin in violation of the FHA.

47. On or about the 12th day of September, 2018, the Plaintiff received a complaint from a family of black Africans composed of the two parents and their five children. Said family complained to the Plaintiff that on or about the 7th day of September, 2018, they were notified that they would be evicted from their three-bedroom apartment at Latah Village by the Defendants for violating the Defendants' two-people-per-bedroom occupancy policy if the family did not vacate within seven days.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

14

48.  Testing conducted by the Plaintiff in or about October 2018 confirmed that the Defendants maintain and enforce a discriminatory occupancy policy or practice with regards to the number of residents who are permitted to reside in a rental unit at Latah Village based on national origin.  For example, when white/Caucasian testers with three adults and four children in their household inquired as to the availability of a three-bedroom apartment at Latah Village, the Defendant Stewart did not impose the two-people-per-bedroom occupancy policy on them to deny them housing.  However, when an Iranian tester with an obvious Iranian accent with the same family composition as that described above inquired as to a three-bedroom apartment at Latah Village, the Defendant Harvey imposed the two-people-per-bedroom occupancy policy on the tester and directed her to apply for a four-bedroom apartment at a different housing complex owned and operated by the Defendants.  Also, in so doing, the Defendant Harvey falsely told the tester that Idaho state law prohibits a family of seven from occupying a three-bedroom apartment.  Such conduct constitutes discrimination on the basis of race, color, national origin, and familial status, and constitutes interference, in violation of the FHA.

49.  On or about the 23rd and 25th day of October, 2018, because the same American-accented tester was told they would be allowed to apply for a one-bedroom unit they were not steered toward the Defendant Tomlinson's website after reiterating that her fifth child was already five years old.

50.  On about the 30th day of October, 2018, when asked for any exceptions to the occupancy policy, the Defendant Harvey steered the tester for the Plaintiff with an obvious Iranian accent to the Defendant Tomlinson's website to search for four-bedroom apartments.

51.  As a result of the violations of the FHA described above concerning Latah Village and Greenfield, as well as the damages that the Plaintiff has incurred as the direct result of the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

Defendants' actions in violation of the FHA, the Plaintiff has filed multiple administrative complaints with the United States Department of Housing and Urban Development (hereinafter "HUD") on its own behalf and has assisted other victims in filing such complaints with HUD.

52.  On or about the 26th day of June, 2019, the Defendant Charlton admitted to HUD Investigator Delancy that she received no training concerning refugee tenants or on cultural awareness.

53.  In or about June or July of 2020, the Defendants renewed the parking rules and engaged Deep Six Parking and Security Services to enforce the parking rules at Latah Village and Greenfield.

54.  From in or about July 2020 through in or about August 2020, another resident of the Subject Property who is a black African and immigrated from Somalia with limited English proficiency informed the Plaintiff that the Defendants renewed their parking rules for Latah Village and that they and their friends were receiving car boots for parking in resident and visitor parking even after the signs indicating the nature of some parking spaces had been removed.

55.  Resident Yasmeen Alghizi (hereinafter "Resident Alghizi") is a second generation American and her father is a first-generation immigrant from Iraq who has limited English proficiency and speaks Arabic.  The Defendants met Resident Alghizi's father at the time that he assisted Resident Alghizi with moving in to Latah Village.  On or about the 21st day of June, 2021, Resident Alghizi contacted the Defendant Stewart to discuss adding an individual to the lease to reside with her at Latah Village as her roommate.  Resident Alghizi told the Defendant Stewart that the proposed roommate did not currently have identification.  The Defendant Stewart told Resident Alghizi that "illegals are not allowed."  Resident Alghizi explained to the Defendant Stewart that the proposed roommate had lost her identification, was waiting for a

copy of her birth certificate to come in the mail, and would be obtaining new identification from the Idaho Department of Motor Vehicles.  From the 21st to the 23rd days of July, 2021, the Defendants issued three lease violation notices to Ms. Alghizi due to the presence of the proposed roommate on Latah Village.  Although Resident Alghizi repeatedly requested that the Defendants meet with her regarding the notices, the Defendants failed or refused to meet with her.  On or about the 22nd day of July, 2021, Resident Alghizi submitted a second application to the Defendants to add the roommate to the lease and the Defendant Stewart told Resident Alghizi that no one could be added to a lease if there are unresolved lease violations.  Resident Alghizi has repeatedly attempted to meet with the Defendants to clarify or correct any lease violations and resolve them but the Defendants have failed or refused to meet with Resident Alghizi or discuss the matter further with her.

## COUNT ONE—DISCRIMINATION ON THE BASIS OF "RACE" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

56.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-55 above.

57.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable or denied, a dwelling on the basis of "race".  42 U.S.C. §3604(a).

58.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "race".  42 U.S.C. §3604(b).

59.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "race".  42 U.S.C. §3604(c).

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

17

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

60.  The Defendants falsely represented to applicants that no dwelling would be available for inspection or rental when, in fact, dwellings were or would be so available.  Such false representations were made because of applicants' "race".  42 U.S.C. §3604(d).

61.  Such conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

62.  But for the actions and omissions of the Defendants, the Plaintiff has incurred injuries.

<u>COUNT TWO— DISCRIMINATION ON THE BASIS OF "NATIONAL ORIGIN" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

63.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-62 above.

64.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable or denied, a dwelling on the basis of "national origin".  42 U.S.C. §3604(a).

65.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "national origin".  42 U.S.C. §3604(b).

66.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "national origin".  42 U.S.C. §3604(c).

67.  The Defendants falsely represented to applicants that no dwelling would be available for inspection or rental when, in fact, dwellings were or would be so available.  Such false representations were made because of applicants' "national origin".  42 U.S.C. §3604(d).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

18

68.  Such conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

69.  But for the actions and omissions of the Defendants, the Plaintiff has incurred injuries.

COUNT THREE— DISCRIMINATION ON THE BASIS OF "COLOR" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

70.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-69 above.

71.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable or denied, a dwelling on the basis of "color".  42 U.S.C. §3604(a).

72.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "color".  42 U.S.C. §3604(b).

73.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "color".  42 U.S.C. §3604(c).

74.  The Defendants falsely represented to applicants that no dwelling would be available for inspection or rental when, in fact, dwellings were or would be so available.  Such false representations were made because of applicants' "color".  42 U.S.C. §3604(d).

75.  Such conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

76.  But for the actions and omissions of the Defendants, the Plaintiff has incurred injuries.

COUNT FOUR— DISCRIMINATION ON THE BASIS OF "FAMILIAL STATUS" IN
VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

77.  The Plaintiff realleges and herein incorporates by reference the allegations set forth

in Paragraphs 1-76 above.

78.  The Defendants have discriminated in the sale or rental of, and otherwise made

unavailable or denied, a dwelling on the basis of "familial status".  42 U.S.C. §3604(a).

79.  The Defendants have discriminated in the terms, conditions and privileges of the sale

or rental of a dwelling, and the services and facilities in connection therewith, on the basis of

"familial status".  42 U.S.C. §3604(b).

80.  The Defendants made, printed or published a notice or statement with respect to the

sale or rental of a dwelling that indicates a preference, limitation or discrimination based on

"familial status".  42 U.S.C. §3604(c).

81.  Such conduct is willful and intentional and exhibits reckless or callous indifference

for the rights of the victims.

82.  But for the actions and omissions of the Defendants, the Plaintiff has incurred

injuries.

COUNT FIVE—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

83.  The Plaintiff realleges and herein incorporates by reference the allegations set forth

in Paragraphs 1-82 above.

84.  The Defendants have engaged in interference in the exercise or enjoyment of rights

granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

85.  Such conduct is willful and intentional and exhibits reckless or callous indifference

for the rights of the victims.

VERIFIED COMPLAINT AND                    20
DEMAND FOR JURY TRIAL
                                                                    KEN NAGY
                                                              Attorney at Law
                                                              Lewiston, Idaho

86.  But for the actions and omissions of the Defendants, the Plaintiff has incurred injuries.

COUNT SIX—NEGLIGENCE

87.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-86 above.

88.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff.

89.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff.

90.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations.

91.  Such conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

92.  But for the actions and omissions of the Defendants, the Plaintiff has incurred injuries.

DAMAGES

93.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-92 above.

94.  But for the actions and omissions of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

95.   The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

96.   The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $129,781.73 which continue to accrue.

97.   The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $146,395.19.

98.   In addition to the injuries suffered by the Plaintiff, it is believed the Defendants have also caused significant and irreparable loss and injury to other as-of-yet unidentified victims.

99.   The Plaintiff and the as-of-yet unidentified victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

100.   All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

101.   A Victims' Compensation Fund should be established in an amount to be determined at trial to adequately compensate as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

      a.   The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $175.00 per hour.  The Plaintiff

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

22

KEN NAGY
Attorney at Law
Lewiston, Idaho

shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

b. Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c. Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall provide Plaintiff with a complete list of all recorded prior residents since 2015 including forwarding addresses and a list of all prior residents' names (over the age of 18).

d. Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

e. Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds. The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper. The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.

f. Within fifteen (15) days after the Defendants deposit funds in the Victims'

VERIFIED COMPLAINT AND            23
DEMAND FOR JURY TRIAL

Compensation Fund, the Plaintiff shall secure and publish notice upon one

billboard in Boise, Idaho, informing viewers of the availability of

compensatory funds. The form and content of the Notice shall be approved by

the Court at the time of the entry of the Court's order establishing the Victims'

Compensation Fund.

g.  Within thirty (30) days of Defendants providing Plaintiff with a complete list

of all recorded prior residents' forwarding addresses and a list of all prior

residents' names, the Plaintiff shall send by first-class mail, postage prepaid, a

copy of the Notice to each known tenant who currently resides or who resided

at any time after January 1, 2015 at Latah Village and Greenfield.

h.  Nothing in this section shall preclude the Plaintiff from making its own

additional efforts at its own expense to locate and provide notice to potentially

aggrieved persons.

i.  Allegedly aggrieved persons shall have one hundred-twenty (120) days from

the date of the entry of an order by this Court creating a Victims'

Compensation Fund to contact the Plaintiff in response to the Notice.  The

Plaintiff shall investigate the claims of allegedly aggrieved persons and, within

one hundred-eighty (180) days from the entry of an order by this Court creating

a Victims' Compensation Fund, shall make a preliminary determination of

which persons are aggrieved and an appropriate amount of damages that should

be paid to each such persons.  The Plaintiff will inform the Defendants in

writing of its preliminary determinations, together with a copy of a sworn

declaration from each aggrieved person setting forth the factual basis of the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

24

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

j.  After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants. When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court.  In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to Latah Village and Greenfield.

k.  If less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.  Said education fund shall be administered by the Plaintiff.

l.    The Defendants shall permit the Plaintiff, upon reasonable notice, to review

any records that may facilitate its determinations regarding the claims of

allegedly aggrieved persons.

102.   The Court should award to the Plaintiff and against the Defendants punitive

damages due to the intentional and willful nature of the Defendants' conduct in an amount to be

determined at trial.

103.   The Court should enjoin the Defendants, their officers, employees, agents,

successors, and all other persons in active concert or participation with said Defendants, from

failing or refusing to comply with all requirements of the FHA and its implementing regulations.

104.   The Court should award to the Plaintiff and against the Defendants reasonable

attorney's fees and costs incurred in this action, as provided for by (1) the Fair Housing Act, 42

U.S.C. §3613(c)(2); (2) Rule 54 of the Federal Rules of Civil Procedure; (3) Rule 54 of the Idaho

Rules of Civil Procedure; and (4) court rule.

105.   The Defendants should be held jointly and severally liable for any and all damages,

including an award of attorney's fees and costs, awarded in this proceeding.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the

Court enter judgment against the Defendants as follows:

A.   That the Court find and declare that the actions of the Defendants constitute violations

of the Fair Housing Act;

B.   That the Court award to the Plaintiff and against the Defendants actual damages in

compensation for its out-of-pocket expenses and past diversion of resources in the amount of

$129,781.73 which continue to accrue;

VERIFIED COMPLAINT AND              26
DEMAND FOR JURY TRIAL
                                                                    KEN NAGY
                                                                  Attorney at Law
                                                                  Lewiston, Idaho

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $146,395.19;

D.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined at trial by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 101 above;

E.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

F.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the Fair Housing Act and its implementing regulations;

G.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

H.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding; and

I.  That the Court order any further and additional relief as the interests of justice may require.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this __20th__ day of __December__, 2021.

_____

KEN NAGY
Attorney for Plaintiff

ZOE ANN OLSON, being first duly sworn on her oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

_____ /s/ ____

ZOE ANN OLSON

STATE OF I D A H O   )
                     : ss
County of __Canyon__ )

I, __Ana C. Chavez__, a Notary Public for said state, does hereby certify that on the __14__ day of __December__, 2021, personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair Housing Council, Inc. who, being by me first duly sworn, declared that she signed the foregoing document as such, and that the statements therein contained are true and accurate as she verily believes.

SEAL
(ANA C CHAVEZ)
(COMMISSION #20210570)
(NOTARY PUBLIC)
(STATE OF IDAHO)
(MY COMMISSION EXPIRES 02/08/2027)

_/s/ (Ana C. Chavez)_
Notary Public in and for the State of __Idaho__
Residing at: __28 Hadley Dr. Wilder ID 83676__
My commission expires: __02/08/2027__

VERIFIED COMPLAINT AND            28
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

**APPENDIX A:**

**PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES**

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Lost Economic Opportunity; and (3) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

**1.  Out-of-Pocket Expenses and Past Diversion of Resources**

The Plaintiff IFHC has diverted its resources and has been deferred from engaging in certain actions as a result of the Defendants' discriminatory actions.  The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint preparation, counseling and other activities with regards to

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND                    29
DEMAND FOR JURY TRIAL
                                        **KEN NAGY**
                                        **Attorney at Law**
                                        **Lewiston, Idaho**

this matter.  Furthermore, the Plaintiff IFHC has been deferred from undertaking or completing numerous activities, including conducting fair housing training of housing providers, enforcement activities that could not be undertaken, conducting a community building campaign, training community organizations, and training the legal community.  As a result, it has incurred expenses as follows:

a.  Pre-litigation Staff Time Expenses:                  $121,475.00

b.  Testing/Investigation/Direct Costs:                   $7,006.50

c.  Educational Costs:                                          $1,300.23

Total Past Diversion of Resources:   $129,781.73

Further litigation of these matters will result in an increase in the Plaintiff IFHC's diversion of resources, as well as other damages.

**3.  Frustration of Mission**

The Plaintiff IFHC's mission is to ensure open and inclusive housing for all people, and to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, sexual orientation, gender identity, source of income, or disability.

The Plaintiff IFHC has determined that it will be necessary to monitor the Defendants' compliance with the FHA and to educate housing consumers and providers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA.  The Plaintiff IFHC shall engage in actions to redress the frustration of its mission and it expects to incur the following expenses as a result:

a. Enforcement Activities:                                   $121,475.00

VERIFIED COMPLAINT AND                    30
DEMAND FOR JURY TRIAL

b. Education Efforts:                                          $3,900.69

c. Monitoring/Testing:                                       $21,019.50

                      Total Frustration of Mission Damages:   $146,395.19


## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1. Out-of-Pocket Expenses and Past Diversion of Resources:   $129,781.73
2. Frustration of Mission:                                   $146,395.19

Total Damages:                                               $276,176.92

VERIFIED COMPLAINT AND               31
DEMAND FOR JURY TRIAL

<u>**APPENDIX B:**</u>

**CALCULATION OF VICTIMS' COMPENSATION FUND**

<u>**I.  INTRODUCTION**</u>

In addition to the damages incurred by the Plaintiffs, it is believed that other as-of-yet

unidentified victims have also suffered damages as the result of the Defendants' discriminatory

actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should

be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the

establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair

Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth*

*Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008

establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of*

*America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July

18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States*

*of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order

entered March 11, 2005 establishing Victims' Compensation Fund in the amount of

$100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-

BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the

amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case

No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims'

Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L.*

*Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is currently unknown.

B.  The number of months that the Defendants have managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is currently unknown.

C.  On average, each of the units could be expected to be rented to a new tenant who is of a protected class addressed by this fund every twelve months.

D.  The number of tenants residing at Latah Village and Greenfield who have been subjected to discriminatory treatment by the Defendants is currently unknown.

E.  The amount of damages awarded to victims of discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $10,000.00 or more (this is a conservative estimate of the amount of damages that should be awarded to a victim of such discrimination, and is therefore not intended in any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $175.00 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be five person/hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $300.00 per identified victim.

## III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

a.  Step One.  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: the total number of units at Latah Village and Greenfield **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of tenants who have encountered discrimination at Latah Village and Greenfield) **times** $10,000.00.

b.  Step Two.  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: the total number of units at Latah Village and Greenfield **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of tenants who have encountered discrimination at Latah Village and Greenfields) **times** five (hours necessary to administer fund per victim) **times** $300.00

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

34

    c. <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should be calculated as follows: the total number of units at Latah Village and Greenfield **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of tenants who have encountered discrimination at Latah Village and Greenfield) **times** $300.00.

    d. <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three.

    The formula described above can be expressed as follows:

$$\frac{(\text{Number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$10,000.00}{12}$$

$$+ \; \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; 3 \; \mathbf{X} \; \$175.00}{12}$$

$$+ \; \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$300.00}{12} = \text{amount of fund}$$

## 3.  Calculation of Victims' Compensation Fund

    Applying the underlying principles, as described above, and the applicable figures, as set forth above, the victims' compensation fund should be established in an amount to be determined at trial once the number of units at Latah Village and Greenfield and the number of months said units have been rented is determined in order to compensate identified victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
**Attorney at Law**
**Lewiston, Idaho**