KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
508 West Chestnut St.
Genesee, Idaho 83832
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC.,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>TOMLINSON & ASSOCIATES, INC.,  )<br>LATAH VILLAGE APARTMENTS,  )<br>LATAH VILLAGE, LLC, GREENFIELD  )<br>APARTMENTS, GOTTA LLC,  )<br>GREENFIELD LLC, MICHELLE  )<br>CHARLTON, TERESA STEWART,  )<br>and HILLARY HARVEY,  )<br>)<br>Defendants.  )<br>_____) | CASE NO. 1:21-cv-506<br><br>PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT<br>(Doc. 27) |

The Defendants Tomlinson & Associates, Inc., Latah Village Apartments, Latah Village,

LLC, Michelle Charlton, Teresa Stewart, and Hillary Harvey filed a Motion for Summary

Judgment (Doc. 27) (hereinafter "Motion") on the 19th day of August, 2022, supported by a

1

PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

Memorandum in Support of Motion for Summary Judgment (Doc. 27-1) (hereinafter "Memorandum") and Defendants' Statement of Undisputed Facts (Doc. 27-2). The Plaintiff Intermountain Fair Housing Council, Inc. hereby responds to said Motion and supporting documents.

## I. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). The Court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cnty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II. ARGUMENT

The Defendants' Motion does not state the basis upon which the Defendants seek summary judgment. Furthermore, neither the Defendants' Motion nor their Memorandum specify which claims they are seeking summary judgment with regards to. In their Memorandum, the Defendants merely state that "most of the claims in the Complaint are time-barred." Doc. 27-1 at 2. The Defendants acknowledge in their Memorandum that some of the allegations contained in the Plaintiff's Complaint are not barred by the statute of limitations. Given this vagueness, the Plaintiff is unable to determine precisely which of its claims are at issue in the Defendants' Motion.

In their Memorandum, the Defendants do not dispute that they have committed violations of the Fair Housing Act, 42 U.S.C. §3601, *et seq.* (hereinafter "FHA"), or have committed negligence, as alleged by the Plaintiff in its Verified Complaint and Demand for Jury Trial (Doc. 1) (hereinafter "Complaint"). Instead, they assert the following arguments in their Memorandum:

(1) That most of the Plaintiff's fair housing claims are barred by the applicable statute of limitations, Doc. 27-1 at 3-11;

(2) That those allegations of fair housing violations that are not barred by the applicable statute of limitations "contain no reference to discriminatory acts by the Defendants or a disparate impact related to these timeframes", Doc. 27-1 at 11-15;

(3) That the majority of the Plaintiff's negligence claims are barred by the applicable statute of limitations, Doc. 27-1 at 15-16;

(4) That the Plaintiff has not properly pled its negligence claims, Doc. 27-1 at 16-17;

(5) That this Court does not have jurisdiction over the Plaintiff's negligence claims, Doc. 27-1 at 17-18; and

(6) That three of the named Defendants should be dismissed as parties to this action, Doc. 27-1 at 18-19.

Each of these arguments shall be addressed below in the order that they arise in the Defendants' Memorandum.

### A. **Whether most of the Plaintiff's fair housing claims are barred by the applicable statute of limitations.**

With regards to the statute of limitations on fair housing claims, the FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district

3

court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice. . . ." 42 U.S.C. §3613(a)(1)(A).  The FHA further provides that "[t]he computation of such 2-year period shall not include any time during which an administrative proceeding under this title was pending with respect to a complaint or charge under this title based upon such discriminatory housing practice." 42 U.S.C. §3613(a)(1)(B).

The Plaintiff does not dispute that many of the violations of the FHA that the Defendants committed over the last several years, as described in the Complaint filed with this Court, took place more than two years prior to the initiation of this action.  Many of the violations at issue were subject to various administrative actions filed with the United States Department of Housing and Urban Development (hereinafter "HUD").  While those matters were pending with HUD, the applicable statute of limitations was tolled.  *Id*.  Even considering such tolling of the statute of limitations, however, the Plaintiff acknowledges that many of the incidents alleged in the Complaint do not fall within the limitations period, unless this Court were to find that the Defendants' violations of the FHA form a pattern of conduct warranting application of the Continuing Violations Doctrine.

The United States Supreme Court has approved the application of the Continuing Violations Doctrine in actions brought pursuant to the FHA.  *Havens Realty Corporation v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114 (1982).  The *Havens* Court reasoned that "a 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination. . . . Petitioners' wooden application of §812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act. . . ." *Id*. at 380.  The *Havens* Court therefore held that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an

4

unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days[1] of the last asserted occurrence of that practice." *Id*. at 380-81.  In order to apply the Continuing Violations Doctrine, the *Havens* Court required a showing of "a continuing violation manifest in a number of incidents at least one. . . that is asserted to have occurred within the [limitations] period." *Id*. at 381.  Furthermore, the Continuing Violations Doctrine is incorporated into HUD regulations.  24 C.F.R. §103.35.

In its Complaint, the Plaintiff has described in detail the numerous incidents of long-term and egregious discriminatory conduct in which the Defendants have engaged.  Doc. 1 at 6-17.  The Plaintiff has alleged that this long-term pattern of discriminatory conduct by the Defendants in violation of the FHA began to occur as early as August 1, 2015 and continued until as recently as July 22, 2021.  Doc. 1 at ¶23 and 55; *Fabbi Aff*. at ¶10.  It is undisputed that the later incidents described in Paragraphs 52 through 55 of the Complaint occurred within two years of the filing of the Complaint by the Plaintiff on December 20, 2021, without even considering any applicable tolling of the statute of limitations as provided by the FHA.

Additionally, certain discriminatory acts of the Defendants were at issue in an administrative complaint filed by the Plaintiff in *Intermountain Fair Housing Council v. Tomlinson*, HUD case No. 10-19-1045-8 (hereinafter "*IFHC v. Tomlinson*").  *Fabbi Aff*. at ¶¶5-6.  Specifically at issue in that administrative action was the Defendants' imposition of discriminatory occupancy requirements on the basis of familial status and national origin, and the tests of the Defendants conducted by the Plaintiff regarding those discriminatory requirements on

---

[1] At the time that the *Havens* decision was issued, the applicable statute of limitations pursuant to the FHA was 180 days.  The FHA was subsequently amended on September 13, 1988 by the enactment of the Fair Housing Amendments Act of 1988, Pub. L. 100-430, to provide for a two-year statute of limitations.

October 23, 25 and 30, 2018. Those matters are addressed by Paragraphs 47 through 51 in the Complaint filed with this Court. Doc. 1 at ¶¶47-51; *Fabbi Aff.* at ¶¶5-6 and *Exh. "B"*.

The administrative complaint in *IFHC v. Tomlinson* was filed by the Plaintiff and received by HUD on June 27, 2019. *Fabbi Aff.* at ¶7 and *Exh. "C"*.[2] It remained pending with HUD until August 18, 2020 for a total of 418 days. *Fabbi Aff.* at ¶7 and *Exh. "D"*. Applying the tolling provisions of the FHA, any incidents that occurred less than 1,148 days[3] prior to the date that the Plaintiff filed its Complaint to this Court on December 20, 2021 would be within the limitations period. 42 U.S.C. §3613(a)(1)(B). The statute of limitations therefore began to run on those incidents on October 29, 2018. *Id*.

The Complaint filed with this Court describes the investigation it conducted as the result of a complaint of housing discrimination it received from black African residents of the property subject to this action. Doc. at 14-15, ¶¶47-50. That investigation, which entailed testing of the Defendants to determine whether there is evidence that they had engaged in the discriminatory acts alleged by the black African residents, was completed on October 30, 2018, on which date the evidence showed that the Defendants do in fact engage in the discriminatory acts that had been alleged by the residents. Doc. at 15, ¶50; *Fabbi Aff.* at ¶6 and *Exh. "B"*.

Thus, applying the tolling provision of the FHA, the evidence acquired as the result of the Plaintiff's investigation shows that the Defendants engaged in housing discrimination in

---

[2] In their Memorandum, the Defendants assert without authority that the Plaintiff filed its administrative complaint with HUD in *IFHC v. Tomlinson* on "August 9, 2019". Doc. 27-1 at 5. In making this assertion, the Defendants rely only on the unsupported assertions contain in the Declaration of David M. Penny in Support of Defendants' Motion for Summary Judgment. Doc. 27-3 at ¶16. The Defendants do not explain in any of their filings why they have chosen this date. However, the Affidavit of Monica Fabbi in Response to Defendants' Motion for Summary Judgment filed herewith proves that the administrative complaint in *IFHC v. Tomlinson* was in fact received by, and therefore filed with, HUD on June 27, 2019. *Fabbi Aff.* at ¶7. HUD regulations provide that an administrative complaint of housing discrimination is filed when it is "receive[d]. . .within one year of the last incident of discrimination." 24 C.F.R. §103.35 (*enacted* 64 FR 18540, April 14, 1999).

[3] This number is determined by adding 730 days (the two-year statute of limitations period) to 418 days (the tolling period).

6

PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

violation of the FHA on October 30, 2018, which is within the limitations period as well. 42 U.S.C. §3613(a)(1)(B); *Fabbi Aff.* at ¶¶6-7.

Throughout the period of time prior to the limitations period, the Defendants also engaged in numerous acts of discriminatory conduct described in Paragraphs 23 through 49 of the Complaint filed with this Court, including:

   a. Discriminatory enforcement of parking rules, Doc. 1 at ¶¶26-27, 30, 35, 38, 41, and 43;
   b. Differential treatment on the basis of race, color and national origin, Doc. 1 at ¶¶28, 31, 32, 33-34, 35, 36-38, and 44-49;
   c. Refusal or failure to make reasonable accommodations, Doc. 1 at ¶¶35 and 40;
   d. Discriminatory terms, conditions or privileges in the rental of a dwelling, ¶¶39, and 45-49;
   e. Overly-restrictive occupancy policies, ¶¶33-34 and 47-49;
   f. Illegal steering, Doc. 1 at ¶¶45 and 47-49; and
   g. Discriminatory statements, Doc. 1 at ¶¶28, 31, 36, 39, 41, and 45-49.

Doc. 1 at 7-15.

Subsequent to October 29, 2018, the Defendants continued to engage in this same long-term pattern of discriminatory conduct, as described in Paragraphs 50 through 55 of the Complaint filed with this Court, including:

   1. Discriminatory enforcement of parking rules, Doc. 1 at ¶¶53-54;
   2. Differential treatment on the basis of race, color and national origin, Doc. 1 at ¶55;
   3. Discriminatory terms, conditions or privileges in the rental of a dwelling, ¶55;
   4. Overly-restrictive occupancy policies, ¶50;
   5. Illegal steering, Doc. 1 at ¶50; and
   6. Discriminatory statements, Doc. 1 at ¶¶50, 52 and 55.

Doc. 1 at 15-17.

Given that the numerous acts of discriminatory conduct engaged in by the Defendants within the limitations period mirror those earlier discriminatory acts engaged in by the Defendants outside of the limitations period, it is clear that all of the discriminatory conduct engaged in by the Defendants, as alleged in the Complaint filed with this Court, constitutes a

7
PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

continuing and long-term pattern of discriminatory conduct. Application of the Continuing Violations Doctrine under such circumstances falls within the ambit of *Havens*, which required a showing of "a continuing violation manifest in a number of incidents at least one. . . that is asserted to have occurred within the [limitations] period." *Havens* at 381. In the case at bar, there is not merely one incident of discriminatory conduct occurring within the limitations period, as required by *Havens*, but instead several acts of discriminatory conduct engaged in by the Defendants. Doc. 1 at 14-17.

The Defendants make no cogent argument nor do they provide any persuasive authority that supports their contention that the Continuing Violations Doctrine should not be applied in this proceeding. They merely contend that the Plaintiff has described only "general allegations that the Defendants discriminated against African residents. . . ." Doc. 27-1 at 7. However, to the contrary, the Plaintiff has provided in its Complaint eleven pages of detailed allegations that describe how the Defendants engaged in illegal discrimination in violation of the FHA on the basis of race, color, religion, sex, handicap, familial status and national origin. Doc. 1 at 7-17.

The Plaintiff does agree with the Defendants when they contend that the facts at issue in *Havens* "are quite different than the facts of this case". Doc. 27-1 at 7. The *Havens* Court observed that "five different specific incidents allegedly in violation of the Fair Housing Act are detailed in the complaint" and that one of those incidents occurred within the limitations period. *Havens* at 380. In contrast, the Plaintiff has detailed dozens of discriminatory acts engaged in by the Defendants over a nearly six-year period of time, several of which occurred within the limitations period. Doc. 1 at 6-17.

Significantly, the Complaint details a long-term and clear intent on the part of the Defendants to harass and drive from the premises its refugee residents. Most telling on this issue

are the undisputed statements of the Defendants' on-site property manager, Defendant Michelle Charlton, to the Boise police officers whom she called out to break up a lawful gathering of African residents at the property at issue in this proceeding.  Doc. 1 at 10, ¶36.  The Boise police officers' recording of their meeting with the Defendant Charlton contains her statements that the apartment complex "is not an African community anymore", that "we have gotten rid of half of them" and that the property is "fifty-percent white now".  *Id*.

Furthermore, the pattern of such discriminatory conduct continued right up until just a few months before the Plaintiff filed its Complaint.  Doc. 1 at ¶55.  The Plaintiff has indeed alleged sufficient incidents of discriminatory conduct by the Defendants to warrant application of the Continuing Violations Doctrine.  *Havens* at 380-81.

The Defendants inappropriately rely on the Ninth Circuit Court of Appeal's decision in *Garcia* to argue that the Continuing Violations Doctrine should not be applied in the case at bar.  Doc. 27-1 at 8 (*citing*, *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008)).  In so doing, the Defendants misconstrue the holding of *Garcia*.  The *Garcia* court held that the discriminatory act alleged in that proceeding, the design and construction of inaccessible housing in violation of the FHA, was a discrete act which occurred outside the two-year statute of limitations and that only the *effects* of that act continued into the statute of limitations period.  *Garcia* at 462-63.  That is not the situation in the case at bar, however.  The Plaintiff has not alleged mere effects of the Defendants' discriminatory conduct but instead has described in detail a long-term pattern of discriminatory acts committed by the Defendants that continued into the limitations period.  Doc. 1 at 7-17.

There also exist compelling policy reasons to apply the Continuing Violations Doctrine in this proceeding.  The Plaintiff's Complaint has detailed the actions it engaged in to communicate

and meet with the Defendants throughout the occurrence of the discriminatory conduct in order to attempt to educate the Defendants regarding the requirements of the FHA.  Doc. 1 at ¶¶40 and 42; *see also*, Doc. 27-3 at 3, ¶11.  Rather than immediately resorting to litigation of the matter, the Plaintiff attempted to resolve the matter through advocacy and education.  If this Court were to refuse to apply the Continuing Violations Doctrine in this proceeding, it would promote immediate litigation of violations in the future and thereby undermine the ability of the Plaintiff to resolve violations through advocacy and negotiation.

Furthermore, it is important for the Plaintiff to be able to do a comprehensive investigation of the complaints of housing discrimination it receives to determine whether it is likely that such discrimination has occurred and to provide counseling of possible victims.  Such investigations and counseling take considerable time and planning to conduct, and the Plaintiff engaged in meetings with victims and testing of the Defendants in order to determine whether evidence exists to support their complaints.  Doc. 1 at ¶¶38, 39, 44-46, 48 and 50.  Applying the Continuing Violations Doctrine to such cases allows the Plaintiff to take the necessary time to complete its investigation and to provide counseling to victims, furthering the "broad remedial intent of Congress embodied in the Act."  *Havens* at 380 (*citing, Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 417, 88 S.Ct. 2186, 2191 (1968)).

In light of these considerations, it would be appropriate to apply the Continuing Violations Doctrine to all of the incidents that occurred outside of the limitations period and allow the Plaintiff to pursue damages for all of those claims.

**B. Whether those allegations of fair housing violations that are not barred by the applicable statute of limitations "contain no reference to discriminatory acts by the Defendants or a disparate impact related to these timeframes".**

Even if this Court finds that the Continuing Violations Doctrine should not be applied in this proceeding, the Plaintiff has nevertheless adequately pled discriminatory conduct which occurred within the limitations period, and it should be permitted to proceed on those claims. Doc. 1 at 15-17, ¶¶50-55.

The Defendants contend, however, that the incidents alleged by the Plaintiff that occurred within the limitations period do not constitute discrimination in violation of the FHA. Doc. 27-1 at 11. It is noteworthy that the Defendants do not cite to any portions of the record in support of this bald assertion and they do not dispute that they engaged in the alleged conduct. Rule 56 requires a party making an assertion to "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." F.R.C.P. 56(c). The Defendants have failed to comply with this requirement and their unsupported assertions should therefore be disregarded.

The record shows that the Plaintiff has alleged that the Defendants engaged in numerous incidents of discrimination within the limitations period, as alleged in Paragraphs 50 through 55 of the Complaint filed with this Court, including:

1. Discriminatory enforcement of parking rules, Doc. 1 at ¶¶53-54;
2. Differential treatment on the basis of race, color and national origin, Doc. 1 at ¶55;
3. Discriminatory terms, conditions or privileges in the rental of a dwelling, ¶55;
4. Overly-restrictive occupancy policies, ¶50;
5. Illegal steering, Doc. 1 at ¶50; and
6. Discriminatory statements, Doc. 1 at ¶¶50, 52 and 55.

Doc. 1 at 15-17.

11
PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

Viewing the facts that are in the record in a light most favorable to the Plaintiff, it has shown that there is a genuine issue as to whether the Defendants have engaged in discriminatory conduct in violation of the FHA and the Defendants are therefore not entitled to judgment as a matter of law. *County of Tuolumne* at 1154; F.R.C.P. 56(c).

### C. **Whether the majority of the Plaintiff's negligence claims are barred by the applicable statute of limitations.**

Under Idaho state law, the four-year statute of limitations provided by Idaho Code §5-224 applies to claims for negligence. *Stapleton v. Jack Cushman Drilling and Pump Company Incorporated*, 153 Idaho 735, 740-41, 291 P.3d 418, 423-24 (2012). The Plaintiff's Complaint filed with this Court was filed on December 20, 2021. Any negligent conduct by the Defendants occurring on or after December 20, 2017 would have occurred within the applicable limitations period.

With regards to its claim of negligence, the Plaintiff has alleged *inter alia* that the Defendants "were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations." Doc. 1 at 21, ¶90. The Complaint details numerous discriminatory acts engaged in by the Defendants during the limitations period which evidence such negligent training of their employees, including:

    a. Discriminatory enforcement of parking rules, Doc. 1 at ¶¶53 and 54;
    b. Differential treatment on the basis of race, color and national origin, Doc. 1 at ¶¶47-49 and 55;
    c. Discriminatory terms, conditions or privileges in the rental of a dwelling, ¶¶47-49 and 55;
    d. Overly-restrictive occupancy policies, ¶¶47-50;

12

  e. Illegal steering, Doc. 1 at ¶¶47-50; and
  f. Discriminatory statements, Doc. 1 at ¶¶47-50, 52 and 55.

Doc. 1 at 14-17.

  The Defendants merely contend in their Memorandum that "the four-year statute of limitations ran in March 2021." Doc. 27-1 at 15. The Defendants provide no authority that supports a finding that a four-year statute of limitations expired just 21 months prior to the filing of the Complaint rather than 48 months prior to the initiation of this action, as provide by Idaho Code §5-224.

  Idaho law clearly provides that the limitations period began on December 20, 2017. I.C. §5-224. Applying this limitations period to the action, all incidents of negligent conduct described in Paragraphs 47 through 55 of the Complaint occurred within the limitations period and are therefore not time-barred. Doc. 1 at 14-17.

  **D.** **<u>Whether the Plaintiff has not properly pled its negligence claims.</u>**

  The Defendants contend in their Memorandum that the Plaintiff has failed to properly plead its negligence claims. Doc. 27-1 at 16-17. It further contends that the damages sought by the Plaintiff are not available in a negligence action. *Id*. In so doing, the Defendants are apparently asserting a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such a motion is not properly brought in the context of a motion for summary judgment and should therefore be disregarded.

  However, in the event that this Court considers the Defendants' improper motion, the Plaintiff contends that its negligence claim was properly pled. The elements of its negligence claim were expressly stated in Paragraphs 87 through 92 of the Complaint. Doc. 1 at 21. In addition, besides describing a long-term pattern of hostile and discriminatory behavior toward

refugee tenants who resided at the properties subject to this action, the Plaintiff has specifically alleged that when interviewed by the HUD investigator, Defendant Charlton admitted that she received no training concerning refugee tenants or on cultural awareness. Doc. 16, ¶52.

A claim for negligent supervision is well-settled in the Idaho courts. *Rausch v. Pocatello Lumber Company, Inc.*, 135 Idaho 80, 14 P.3d 1074, 1080 (Idaho App. 2000). The *Rausch* court observed that "a negligent supervision claim is not based upon imputed or vicarious liability but upon the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee." *Id*.

The Plaintiff has described in detail its mission in the Complaint and how that mission was frustrated as the result of the Defendants' discriminatory conduct. Doc. 1 at 5-6, ¶¶15-16. The Defendants are providers of housing that is subject to the requirements of the FHA. Doc. 1 at 3-5, ¶4-12. The Defendants have a duty to exercise due care to adequately train their employees to not engage in the discriminatory and tortious conduct described in detail in the Complaint so as to avoid injury to the Plaintiff. It was foreseeable that the Defendants' failure to adequately supervise and train their employees with regards to the requirements of the FHA would frustrate the mission of the Plaintiff, cause a diversion of its resources, and thereby result in injury to the Plaintiff. Such damages are actionable under the FHA. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2001) (finding direct standing to sue for a fair housing organization where it shows a frustration of its mission and diversion of its resources). The allegations contained in the Complaint make it clear that the Defendants failed to comply with their duty to avoid injury to the Plaintiff as the result of their negligent conduct.

Furthermore, the Defendants assert that "[t]he economic loss rule bars negligence claims that seek only damages that are economic in nature." Doc. 27-1 at 16. However, they

14

PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

incorrectly assert that "the economic loss rule bars IFHC's claim for negligence as it is seeking only economic damages." *Id*.

In making this argument, the Defendants misconstrue the holding of *Blahd*, upon which they rely. *Id*. (*citing, Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 108 P.3d 996 (2005)). The Defendants apparently contend that the economic loss rule prevents a party from seeking money damages in a negligence case. However, there is no authority for such an argument and the *Blahd* Court makes it clear that the economic loss rule applies only to "'costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.'" *Id*. (*citing and quoting, Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co.,* 97 Idaho 348, 351, 544 P.2d 306, 309 (1975)). As the Plaintiff is not seeking the types of damages that the economic loss rule disallows, the Plaintiff is not prevented from seeking the damages it has itemized in its Complaint. Doc. 1 at 21-26, ¶93-105, *App. "A"* and *App. "B"*.

### E. Whether this Court does not have jurisdiction over the Plaintiff's negligence claims.

The Defendants contend that this Court should decline to exercise jurisdiction over the Plaintiff's negligence-based claims because it does not have jurisdiction over such claims without a federal question at issue in the action. Doc. 27-1 at 17-18. This argument presupposes that this Court will dismiss the Plaintiff's claims based on the FHA.

The Plaintiff has set forth above its arguments that this Court should not dismiss its claims based on the FHA. In the event that this Court refuses to grant summary judgment to the Defendants on those claims, the Defendants' jurisdiction argument is moot as this Court has supplemental jurisdiction to hear the state law-based negligence claim as well. 28 U.S.C.

15

PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
(Doc. 27)

§1367(a). However, even in the event that this Court grants summary judgment to the Defendants on the claims based upon federal law, it is nevertheless permitted to exercise jurisdiction over the state law-based negligence claim. *Id*. The Ninth Circuit Court of Appeals has made it clear that federal courts have the authority to do so even when the federal claims have been dismissed. *Imagineering, Inc. v. Kiewit Pacific Company*, 976 F.2d 1303, 1309 (1992). The *Imagineering* court held that in deciding whether to continue to exercise jurisdiction under such circumstances, the court should consider several factors, including "economy, convenience, fairness, and comity. . . ." *Id*. Given that the negligence claims are intertwined with the claims based on the FHA, all of these policies would be promoted by continuing to exercise jurisdiction over the negligence claim in the event that the FHA claims are dismissed.

  **F. <u>Whether three of the named Defendants should be dismissed as parties to this action.</u>**

  In advancing this argument, the Defendants contend that "Latah Village Apartments and Greenfield Apartments are not legal entities that can sue or be sued in a lawsuit." Doc. 27-1 at 18. However, the Defendants cite no authority for this contention and there appears to be no authority which prevents an action being brought against an unincorporated entity. It would indeed be odd to disallow an unincorporated entity from being subject to suit because doing so would promote the holding of assets by unincorporated entities and thereby shield those assets from suit.

  The Plaintiff has alleged that these two Defendants are both "unincorporated entit[ies] doing business in the State of Idaho as. . .multi-family apartment complex[es]. . . ." Doc. 1 at 4, ¶¶5 and 7. As such, they would be liable for any discriminatory conduct in which they or their agents engaged in violation of the FHA.

Furthermore, in seeking the dismissal of these two Defendants, as well as the Defendant Gotta LLC, the Defendants have failed to comply with the strict requirements and procedures of Rule 56 of the Federal Rules of Civil Procedure.  F.R.C.P. 56.  In their Memorandum, the Defendants assert mere conclusory statements of fact with no citations to anything in the record.  As discussed above, Rule 56 requires a party making an assertion to "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." F.R.C.P. 56(c).

With regards to the Defendants' request to dismiss the Defendant Gotta LLC as a party to this action, the Plaintiff has alleged that the Defendant Gotta LLC "was a limited liability company that did business at the time relevant to this complaint [and] was the owner of record of [Defendant] Greenfield at times relevant to this complaint."  Doc. 1 at 4, ¶8.  Indeed, the research conducted by the Plaintiff prior to initiating this action shows that Defendant Gotta LLC was the owner of record of the Defendant Greenfield Apartments, as indicated by the official records of the Ada County Assessor's Office.  *Fabbi Aff*. at ¶4.  In contrast, the Defendants merely assert without any reference to the record that "Gotta LLC is a passive member of [Defendant] Greenfield LLC that acts only as an investor in the LLC."  Doc. 27-1 at 19.

In disputing the Plaintiff's allegations as contained in its Complaint (Doc. 1) that are in the record, the Defendants cite to no portion of the record that contradicts such allegations.  Viewing the evidence in a light most favorable to the non-moving party, the Defendant Gotta LLC was an owner of the Defendant Greenfield Apartments at times relevant to this action.  Doc. 1 at 4, ¶8; *Fabbi Aff*. at ¶4.  As such, the Defendant Gotta LLC would be a proper party to the proceeding and may be held liable for the acts of itself and its agents.  *Walker v. Crigler*, 976

F.2d 900, 904 (4th Cir. 1992) ("[T]he duty of a property owner not discriminate in the leasing or sale of that property is non-delegable.").

In light of these considerations and the Defendants' complete failure to comply with the requirements and procedures of Rule 56, the three Defendants for whom they seek dismissal should be denied.

### III.  CONCLUSION

The Defendants have failed to provide a cogent argument and the required citations to the record to show that it would be appropriate to grant them summary judgment on any of the Plaintiff's claims.  The Defendants' Motion for Summary Judgment (Doc. 27) should therefore be denied in its entirety.

DATED this  8th  day of  September , 2022.

_____
KEN NAGY
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the  8th  day of  September , 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Carsten A. Peterson
Joshua O'Hare
Hawley Troxel Ennis & Hawley, LLP
P.O. Box 1617
Boise, ID 83701-1617

_____
Ken Nagy